## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                                     No. CR 19-2847 JB

ALBERTO MORALES-MEJIA,

     Defendant.

### <u>MEMORANDUM ORDER AND OPINION</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Objections to the Presentence Report & Sentencing Memorandum, filed February 16, 2021 (Doc. 32)("Sentencing Objections"), and (ii) the United States' Response to Defendant's Objections to the Presentence Report and Sentencing Memorandum, filed March 5, 2021 (Doc. 34)("Response").  The primary issues are: (i) whether Defendant Alberto Morales-Mejia possessed a firearm in connection with his drug offense such that he is ineligible for the safety-valve provision of 18 U.S.C. § 3553(f) and the 2-level reduction pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(18); and (ii) whether Morales-Mejia's possession of a firearm justifies application of U.S.S.G. § 2D1.1(b)(1)'s 2-level enhancement.  The Court concludes that: (i) Morales-Mejia did not possess a firearm in connection with his drug offense, so he is eligible for the safety-valve provision pursuant to 18 U.S.C. § 3553(f) and the corresponding 2-level reduction pursuant to U.S.S.G. § 2D1.1(b)(18); and (ii) Morales-Mejia possessed a firearm, so U.S.S.G. § 2D1.1(b)(1)'s 2-level enhancement applies.

**FINDINGS OF FACT**

1.       Morales-Mejia is a citizen and national of Mexico unlawfully present in the United States.  See Presentence Investigation Report ¶ 23, at 7, filed February 2, 2021 (Doc. 30)("PSR").

2.       In 2018, law enforcement began an investigation into methamphetamine trafficking in Albuquerque, New Mexico, using confidential sources and undercover agents.  See PSR ¶ 13, at 5.

3.       The New Mexico State Police Department conducted controlled methamphetamine purchases from Morales-Mejia on September 4, 2018, September 7, 2018, and September 9, 2018. See PSR ¶ 13, at 5.

4.       New Mexico State Police Department contacted federal authorities for collaboration on the investigation of Morales-Mejia's drug trafficking.  See PSR ¶ 14, at 6.

5.       On October 10, 2018, an undercover agent purchased 55.509 grams of methamphetamine from Morales-Mejia.  See PSR ¶ 15, at 6.

6.       During the October 10, 2018, transaction, the undercover agent observed a red Dodge Dakota truck of which Morales-Mejia was the only occupant.  See PSR ¶ 15, at 6.

7.       On October 31, 2018, an undercover agent arranged for the purchase of two ounces of methamphetamine from Morales-Mejia.  See PSR ¶ 16, at 6.

8.       On November 1, 2018, Morales-Mejia arrived at a Walmart driving the red Dodge Dakota truck.  See PSR ¶ 16, at 6.

9.       The undercover agent entered the Dodge Dakota to purchase the methamphetamine. See PSR ¶ 16, at 6.

10.      The methamphetamine was in a red box sitting on the truck's dashboard.  See PSR ¶ 16, at 6.

11.     As the undercover agent reached to take the box of methamphetamine, Morales-Mejia stated: "[L]ook what I got."  PSR ¶ 17, at 6.

12.     Morales-Mejia displayed a small chrome two-round pistol and showed the undercover agent two live rounds of ammunition in the barrel.  See PSR ¶ 17, at 6.

13.     Morales-Mejia told the undercover agent that a friend gave him the firearm, and that he could not sell it because it was a gift.  See PSR ¶ 17, at 6.

14.     The undercover agent purchased 56.24 grams of methamphetamine from Morales-Mejia on November 1, 2018.  See PSR ¶ 18, at 6.

15.     While Morales-Mejia was counting the money from the transaction, the undercover agent asked if he could see the weapon.  See Sentencing Objections at 3.

16.     Morales-Mejia "advised it was fine," and the undercover agent "reached over [and] grabbed it from his lap."  Sentencing Objections at 3 (no citation for quotation).  See Response at 2 ("After giving the money to the defendant, the defendant allowed the undercover to take possession of the weapon as the defendant counted the money.").

17.     "The undercover agent opined that he 'believed,' in retrospect, the display of the weapon was incidental to the drug sale.  In short, the undercover believed, in retrospect, that the defendant was showing him a gun that he claimed he had just received as a gift."  Response at 2 (no citation for quotation).

18.     On December 18, 2018, an undercover agent purchased 384.5 grams of methamphetamine from Morales-Mejia at the same Walmart location as the November 1, 2018, transaction.  See PSR ¶ 19, at 7.

19.     On January 30, 2019, an undercover agent contacted Morales-Mejia asking to purchase one-half pound of methamphetamine, but Morales-Mejia advised that he was unable to

procure methamphetamine from his previous supplier and that his new source's methamphetamine was lower quality.  See PSR ¶ 21, at 7.

20.     On March 4, 2019, an undercover agent contacted Morales-Mejia, again asking to purchase one-half pound of methamphetamine, and Morales-Mejia advised that he had the methamphetamine, but that his vehicle was inoperable.  See PSR ¶ 22, at 7.

## PROCEDURAL BACKGROUND

On August 27, 2019, a federal Grand Jury charged Morales-Mejia with: (i) Counts 1 and 2, violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), for distributing 50 grams or more of a mixture and substance containing methamphetamine; (ii) Count 3, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), for distributing 50 grams or more of methamphetamine; (iii) Count 4, a violation of 18 U.S.C. §§ 922(g)(5) and 924, for being an alien in possession of a firearm; and (iv) Count 5, a violation of 8 U.S.C. §§ 1326(a) and (b), for reentry of a removed alien.  See Indictment, filed August 27, 2019 (Doc. 2).  A federal warrant for Morales-Mejia's arrest was issued on August 28, 2019.  See PSR ¶ 22, at 7.  The Albuquerque Police Department arrested Morales-Mejia on December 6, 2019, for Receiving/Transferring a Stolen Vehicle and for Possession of Methamphetamine.  See PSR ¶ 24, at 8.  Because there was a federal warrant for his arrest, federal officers took Morales-Mejia into federal custody.  See PSR ¶ 24, at 8.  On November 23, 2020, Morales-Mejia pled guilty to Count 3 for distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and to Count 5 for reentering the United States as a removed alien, in violation of 8 U.S.C. §§ 1326(a) and (b).  See Plea Agreement, filed November 23, 2020 (Doc. 28).  The Plea Agreement also states:

> The Defendant may be eligible for the 'safety valve' provisions set forth at 18 U.S.C. § 3553(f)(1)-(5). . . .  If the Defendant establishes eligibility for each of the elements in § 3553(f)(1)-(5) and USSG § 5C1.12, the Defendant would be entitled pursuant to USSG § 2D1.1(b)(18) to a reduction of two levels from the base offense

level as calculated under the sentencing guidelines, and that the sentence imposed
could be less than any statutory minimum sentence that would otherwise apply.  If
the Defendant establishes eligibility for each of the elements in § 3553(f)(1)-(5) as
amended by the First Step Act but does not qualify under USSG § 5C1.2, the United
States agrees that the Defendant may receive a two-level reduction in the
Sentencing Guidelines offense level as a variance and the sentence imposed could
be less than any statutory minimum sentence that would otherwise apply.

Plea Agreement ¶ 5, at 3-4.  In the PSR, the United States Probation Office ("USPO") determines

that Morales-Mejia does not satisfy the elements of the safety-valve provision in U.S.S.G. § 5C1.2,

because Morales-Mejia brandished a firearm during the drug transaction with an undercover agent

on November 1, 2018.  See PSR ¶ 28, at 8.  Accordingly, the USPO recommends that the Court

disregard the United States and Morales-Mejia's stipulation about the safety valve's application,

and the USPO calculates Morales-Mejia's offense level without regard to 18 U.S.C. § 3553(f)(1)-

(5) or U.S.S.G. § 5C1.12.  See PSR ¶ 28, at 8.  The USPO also recommends a 2-level enhancement

pursuant to U.S.S.G. § 2D1.1(b)(2), because a firearm was present during Morales-Mejia's drug

transaction.  See PSR ¶ 36, at 10.  The USPO concludes,

> Based upon a total offense level of 31 and a criminal history category of I,
> the guideline imprisonment range is 108 months to 135 months.  However, the
> statutorily authorized minimum sentences are greater than the minimum of the
> applicable guideline range; therefore, the guideline range is 120 months to 135
> months.

PSR ¶ 92, at 17.

In his Sentencing Objections, Morales-Mejia argues that he qualifies for the safety-valve

relief and 2-level reduction pursuant to U.S.S.G. § 2D1.1(b)(18).  See Sentencing Objections at 1.

Morales-Mejia contends that the Court should apply the safety valve, because the parties agree

that he is safety-valve eligible.  See Sentencing Objections at 2.  Moreover, Morales-Mejia notes

that the United States also believes that Morales-Mejia did not possess the gun in connection with

the drug offense, because the undercover agent "expressed the opinion that the gun was unrelated

to the purchase of the drugs." Sentencing Objections at 4. Accordingly, Morales-Mejia argues that the safety-valve provision should apply, and the 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) should not apply, making Morales-Mejia's offense level 27 with a guidelines range of 70-87 months. See Sentencing Objections at 6.

In its Response, the United States agrees with Morales-Mejia that Morales-Mejia's firearm possession does not preclude him from safety valve relief and the 2-level reduction pursuant to U.S.S.G. § 5C1.2. See Response at 1. The United States contends, however, that Morales-Mejia's firearm possession supports a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). The United States notes that the United States Court of Appeals for the Tenth Circuit has held that a court can find that a defendant's possession of a firearm in connection with a drug offense does not make him ineligible for the safety-valve provision pursuant to § 5C1.2(a)(2), but that same firearm possession supports a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), because there are distinctions between the language and evidentiary standards between §§ 5C1.2(a)(2) and 2D1.1(b)(1). See Response at 3. Consequently, the United States contends that Morales-Mejia's offense level should be 29, and the applicable guidelines range is 87-108 months. See Response at 2.

The USPO responds to Morales-Mejia and the United States' Objections to the PSR in its Addendum to the Presentence Report, filed March 18, 2021 (Doc. 35)("Addendum to PSR"). At the outset, the USPO agrees that "the sentence enhancement pursuant to USSG § 2D1.1(b)(1) does not foreclose sentence reduction pursuant to USSG § 5C1.2(a)(2)." Addendum to PSR at 2. The USPO contends, however, that "the defendant constructively possessed a firearm during a drug trafficking transaction, which he brandished to the undercover officer. Therefore, the probation office maintains the defendant does not meet the criteria of USSG § 2D1.1(b)(18) and USSG

§ 5C1.2 (a)(2)."  Addendum to PSR at 2.  Further, the USPO contends that, because "[t]he defendant possessed a firearm on his person during a drug transaction and brandished it to the undercover officer during the exchange," U.S.S.G. § 2D1.1(b)(1)'s 2-level application "for possession of the weapon" will remain unchanged.  Addendum to PSR at 3.

## LAW REGARDING 18 U.S.C. § 3553(f)

The statutory safety-valve provision, 18 U.S.C. § 3553(f), provides:

(f)    **Limitation on applicability of statutory minimums in certain cases.** -- Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that --

(1)    the defendant does not have --

(A)    more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B)    a prior 3-point offense, as determined under the sentencing guidelines; and

(C)    a prior 2-point violent offense, as determined under the sentencing guidelines;

(2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)    the offense did not result in death or serious bodily injury to any person;

(4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5)     not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).  A mandatory minimum limits a court's discretion during sentencing and restricts a court's ability to impose a sentence below the statute's mandatory minimum.  See, e.g., United States v. De Paz, 200 F. App'x 791, 792 (10th Cir. 2006)(unpublished)[1](holding that, "when a defendant pleads guilty to a crime that carries a mandatory minimum sentence, the court has no discretion to do anything other than impose the sentence required by the statute."); United States v. Cummins, No. CR 06-1339 JB, 2008 WL 4821626, at *8 (D.N.M. July 1, 2008)(Browning, J.)("While the court may vary below the advisory Guideline range, the court does not have such discretion to depart or vary below the statutory minimum sentence.").  Only when Congress has provided a statutory exception to a mandatory minimum may a court impose

---

[1]United States v. De Paz is an unpublished United States Court of Appeals for the Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. De Paz has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

a sentence below the mandatory minimum.  See United States v. Campbell, 995 F.2d 173, 175 (10th Cir. 1993)("When a sentence is fixed by statute, any exception to the statutory directive must also be given by statute.").

### LAW REGARDING U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2(a)(2)

U.S.S.G. § 2D1.1(b)(18) provides: "If the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels." U.S.S.G. § 2D1.1(b)(18).  U.S.S.G. § 5C1.2(a) provides:

> (a)  Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
>
> > (1)  the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
> >
> > (2)  the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> >
> > (3)  the offense did not result in death or serious bodily injury to any person;
> >
> > (4)  the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
> >
> > (5)  not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to

provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a).

## LAW REGARDING U.S.S.G. § 2D1.1(b)(1)

U.S.S.G. § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."  In United States v. Zavalza-Rodriguez, 379 F.3d 1182 (10th Cir. 2004), the Tenth Circuit considered whether a court may conclude that U.S.S.G. § 2D1.1's 2-level enhancement applies when the court decides that the defendant did not possess a firearm in connection with the offense pursuant to U.S.S.G. § 5C1.2(a)(2).  See United States v. Zavalza-Rodriguez, 379 F.3d at 1184.  The Tenth Circuit emphasized that the § 5C1.2(a)(2)'s language requires that the defendant "possess a firearm . . . in connection with the offense," while the § 2D1.1(b)(1)'s language requires that the firearm "was possessed."  United States v. Zavalza-Rodriguez, 379 F.3d at 1185 (quoting U.S.S.G. §§ 5C1.2(a)(2) and 2D1.1(b)(1)).  The Tenth Circuit concluded that "a court [can] to refer to the same weapon that 'was possessed' by the defendant for purposes of § 2D1.1(b)(1) as a weapon that the defendant did not 'possess . . . in connection with the offense' for purposes of § 5C1.2(a)(2), without any taint of contradiction in the use of 'possess.'"  United States v. Zavalza-Rodriguez, 379 F.3d at 1185 (quoting U.S.S.G. §§ 5C1.2(a)(2) and 2D1.1(b)(1)).

## ANALYSIS

The Court concludes that Morales-Mejia did not possess a firearm in connection with his drug trafficking offense, and thus is eligible for relief under the safety-valve provision of 18 U.S.C. § 3553(f) and the corresponding 2-level reduction pursuant to § 2D1.1(b)(18).  The Tenth Circuit does not preclude § 2D1.1(b)(1)'s 2-level enhancement for a defendant possessing a firearm, even

where a court has found that the defendant did not possess a firearm in connection with the offense. The Court also concludes that Morales-Mejia possessed a firearm, thus justifying § 2D1.1(b)(1)'s application.

## I.   MORALES-MEJIA DID NOT POSSESS A FIREARM IN CONNECTION WITH THE OFFENSE.

At the outset, the Court notes that it may not sentence Morales-Mejia to a sentence below the statutory mandatory minimum unless Congress has provided a statutory exception to the mandatory minimum.  See United States v. Campbell, 995 F.2d at 175.  The statutory mandatory minimum for Morales-Mejia's conviction for a violation of 21 U.S.C.§§ 841(a)(1) and (b)(1)(A) is 10 years or 120 months.  See 21 U.S.C. § 841(b)(1)(A).  Accordingly, the Court first must consider whether Morales-Mejia is eligible for safety-valve relief pursuant to 18 U.S.C. § 3553(f) to determine if the Court can sentence Morales-Mejia to less than 120 months imprisonment. Moreover, U.S.S.G. § 2D1.1(b)(18) instructs the Court to apply a 2-level reduction to Morales-Mejia's guidelines range if Morales-Mejia's offense meets the criteria of U.S.S.G. § 5C1.2(a), which mirrors the criteria of 18 U.S.C. § 3553(f).[2]

---

[2]In passing the First Step Act, Congress amended 18 U.S.C. § 3553(f)(1) to read

the defendant does not have --

> (A)   more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>
> (B)   a prior 3-point offense, as determined under the sentencing guidelines; and
>
> (C)   a prior 2-point violent offense, as determined under the sentencing guidelines . . . .

18 U.S.C. § 3553(f)(1).  Before this amendment, 18 U.S.C. § 3553(f)(1) applied only to a defendant who had no more than one prior criminal history point.   See 18 U.S.C.

Morales-Mejia meets the elements of 18 U.S.C. § 3553(f)(1), (3)-(5) to make him eligible for the safety valve.  The issue is whether Morales-Mejia "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  18 U.S.C. § 3553(f)(2).  In United States v. Hargrove, 911 F.3d 1306 (10th Cir. 2019), the Tenth Circuit analyzed what it means for a defendant to possess a firearm in connection with the offense.  See United States v. Hargrove, 911 F.3d at 1327.  In relevant part, the Tenth Circuit notes that a firearm is possessed in connection with the offense only if the firearm facilitated or had the potential to facilitate the offense.  See United States v. Hargrove, 911 F.3d at 1327-28.  Further, the Tenth Circuit notes that possession in connection with the offense requires "'an active possession whereby there is a close connection linking the individual defendant, the weapon and the offense.'"  United States v. Hargrove, 911 F.3d at 1327 (quoting United States v. Zavalza-Rodriguez, 379 F.3d at 1187)(emphasis in United States v. Hargrove).  The Tenth Circuit continues, acknowledging that "active possession" requires more than "mere constructive possession."  United States v. Hargrove, 911 F.3d at 1327 (citing United States v. Zavalza-Rodriguez, 379 F.3d at 1187).

The Court agrees with both the United States and Morales-Mejia that Morales-Mejia did not possess a firearm in connection with the offense and, therefore, that 18 U.S.C. § 3553(f)'s safety-valve provision and U.S.S.G. § 2D1.1(b)(18)'s 2-level reduction apply.  The parties do not

---

§ 3553(f)(1)(amended by First Step Act of 2018, Pub. L. No. 115-391, § 402, 132 Stat. 5194, 5221).  Although U.S.S.G. § 5C1.2(a) notes that the reduction applies if the defendant "meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below," the United States Sentencing Commission has not updated § 5C1.2(a)'s language of to reflect the First Step Act's Amendment to 18 U.S.C. § 3553(f)(1).  Here, Morales-Mejia does not have more than 1 criminal history point, and neither the United States nor the USPO contends that § 5C1.2(a)(1) precludes § 5C1.2(a)'s application.  Consequently, for Morales-Mejia, the Court treats § 5C1.2(a) as a mirror of 18 U.S.C. § 3553(f).

dispute that Morales-Mejia possessed a firearm during the November 1, 2018, drug transaction with an undercover officer.  See Sentencing Objections at 4; Response at 4.  The Tenth Circuit has been clear, however, that constructive possession, without more, is not enough for a court to conclude that a defendant used a firearm in connection with an offense.  See United States v. Hargrove, 911 F.3d at 1327.  Here, Morales-Mejia showed the undercover agent his firearm and said: "[L]ook what I got."  PSR ¶ 17, at 6.  When the undercover agent asked Morales-Mejia if he could hold the firearm, Morales-Mejia agreed, and Morales-Mejia allowed the undercover agent to hold the firearm while Morales-Mejia counted the money exchanged for methamphetamine. See Sentencing Objections at 3; Response at 2.  That Morales-Mejia allowed the undercover agent to hold the firearm while Morales-Mejia counted the money -- the most sensitive point of a drug transaction -- indicates to the Court that Morales-Mejia did not use, or have the potential to use, the firearm to "facilitate" the drug transaction.  United States v. Hargrove, 911 F.3d at 1327-28. Consequently, the Court agrees with the United States and Morales-Mejia that Morales-Mejia is eligible for the safety-valve provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(18)'s 2-level reduction, and the Court sustains Morales-Mejia's Objection.  Moreover, because Morales-Mejia is eligible for 18 U.S.C.§ 3553(f)'s safety-valve provision of, the Court may sentence Morales-Mejia to a term of imprisonment below his 120-month mandatory minimum.

## II.    MORALES-MEJIA POSSESSED A FIREARM.

Morales-Mejia contends that the Court should not apply the 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), because his possession of a firearm did not increase the danger of the drug transaction and, therefore, does not advance § 2D1.1(b)(1)'s purpose, which is to reflect the "'increased danger of violence when drug traffickers possess weapons.'"  Sentencing Objections at 6 (quoting U.S.S.G. § 2D1.1(b)(1) cmt. 11). The Tenth Circuit in United States v. Zavalza-

Rodriguez concluded that, "[f]or purposes of § 2D1.1 constructive possession, either physical proximity or participation in a conspiracy, is sufficient to establish that a weapon 'was possessed.'" United States v. Zavalza-Rodriguez, 370 F.3d at 1187 (no citation for quotation). Moreover, the Tenth Circuit noted that, "for the purposes of § 2D1.1(b)(1), once the government has met its initial burden of showing that a weapon 'was possessed,' the defendant must then show that it is clearly improbable that a weapon was . . . connected to the offense." United States v. Zavalza-Rodriguez, 370 F.3d at 1187 (quoting United States v. Pompey, 264 F.3d 1176, 1181 (10th Cir. 2001)). Here, there is no dispute that Morales-Mejia possessed a firearm during the November 1, 2018, drug transaction. See Sentencing Objections at 4; Response at 4. Thus, the burden falls on Morales-Mejia to prove that it is clearly improbable that the firearm was connected to the drug trafficking offense. Application Note 11 to U.S.S.G. § 2D1.1 provides:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1(b)(1) cmt. 11. Here, the Court cannot conclude soundly that it was clearly improbable that there was no connection between Morales-Mejia's firearm and the drug trafficking he conducted. Morales-Mejia would have the Court believe that his firearm possession during the November 1, 2018, drug transaction was mere coincidence, but Morales-Mejia does not provide the Court with sufficient evidence to conclude that the firearm possession and drug trafficking activities were unrelated. As Application Note 11 clarifies, § 2D1.1's purpose is to reflect the danger presented when a drug trafficker possesses a weapon, unless the two instances are clearly unrelated. See U.S.S.G. § 2D1.1(b)(1) cmt. 11. Here, where Morales-Mejia had a firearm in the vehicle in which he conducted drug transactions, the Court concludes that Morales-Mejia does not

demonstrate that it is clearly improbable that the two are unrelated.   Consequently, the Court

overrules Morales-Mejia's Objection.

   **IT IS ORDERED** that the Objections in the Defendant's Objections to the Presentence

Report & Sentencing Memorandum, filed February 16, 2021 (Doc. 32), are sustained with respect

to the safety-valve provision in 18 U.S.C. § 3553(f)'s application and U.S.S.G. § 2D1.1(b)(18)'s

corresponding 2-level reduction, and overruled in part with respect to U.S.S.G. § 2D1.1(b)(1)'s 2-

level enhancement.


_____
UNITED STATES DISTRICT JUDGE



*Counsel*:

Fred J. Federici
  Acting United States Attorney
Peter J. Eicker
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Margaret Katze
  Federal Public Defender
Alejandro Benito Fernandez
  Assistant Federal Public Defender
Albuquerque, New Mexico

        *Attorneys for the Defendant*